## CREASEY CORPORATION v. HELBURN, Collector of Internal Revenue.

### No. 1314.

District Court, W. D. Kentucky, at Louisville. March 8, 1932.

Woodward, Hamilton & Hobson and E. J. Wells, all of Louisville, Ky., for plaintiff.

T. J. Sparks, U. S. Atty., and Frank A. Ropke, Asst. U. S. Atty., both of Louisville, Ky., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Frank J. Ready, Jr., Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for defendant.

DAWSON, District Judge.

This is a suit for the recovery of income taxes for the year 1928, claimed to have been illegally exacted by the Commissioner.

The plaintiff was organized as a corporation in 1918. From the date of its incorporation until the present time it has been engaged in the co-operative wholesale grocery business, and also owns the capital stock of other corporations engaged in the same business. As a part of its plan of doing business it entered into what are known as service contracts with retail grocers in all parts of the United States. These contracts ran for different periods, some for ten, some for twenty, and others for fifty years. The form of the contract is as follows:

"Service Contract.

"This certifies that ———— of ————, hereinafter styled the member, has paid to

The Creasey Corporation the sum of Three Hundred ($300.00) Dollars, in consideration of which, together with the mutual covenants hereinafter set out, all of which are agreed to by said member, entitles said member to the rights and services as follows, to-wit:

"The member will be entitled for a period of ——— years from the date of his contract to purchase any merchandise, which The Creasey Corporation may have or can secure, at cost plus the necessary expense of doing business in accordance with the terms hereinafter set forth.

"The member may have credit with The Creasey Corporation in the sum of Three Hundred ($300.00) Dollars. Said credit to be in accordance with the following terms:

"Merchandise shipped from any warehouse of The Creasey Corporation except sugar to be paid for ten days from date of invoice. All merchandise shipped direct from any manufacturer or producer or any dealer other than The Creasey Corporation, classed by the manufacturer, producer or dealer as a Drop Shipment and all shipments of sugar to be paid for five days from date of invoice. Upon all drop shipments and shipments of sugar, flour, tobaccos, cigarettes, meats, lard, hay, feeds, and grain, three per cent. (3%) will be added to the cost of the merchandise and upon all other merchandise five per cent. (5%) will be added to the cost. Upon all drop shipments and shipments of sugar a discount of two per cent. (2%) will be allowed if the invoice is paid within five days from its date, and upon all other shipments or merchandise a discount of two per cent. (2%) will be allowed if the invoice is paid within ten days from its date.

"On all purchases in excess of Three Hundred ($300.00) Dollars cash or its equivalent must accompany orders.

"The Creasey Corporation agrees to mail all of its regular and special quotations to the member, and to supply to said member all price-lists, quotations and advices now or hereafter given to all of its shareholders and members, and to render to the member the same service that it renders to its shareholders.

"By courtesy, said subscriber will be permitted to buy merchandise at cost plus the necessary expense of conducting the business from any of the houses affiliated with The Creasey Corporation as long as they may be working in harmony with The Creasey Corporation. This courtesy is not guaranteed for any definite period, as the affiliated houses are operating under charters separate from that of The Creasey Corporation.

"It is understood and agreed to by the member (Service Contract Holder) that he will not have the right to trade this certificate out in merchandise. All merchandise must be paid for in accordance with the terms contained herein.

"This certificate shall be transferable only to a Retail Merchant who is acceptable to The Creasey Corporation. Such transfer to be made by proper endorsement upon the back hereof.

"No transfer will be made until the member to whom this certificate is issued shall have paid in full any indebtedness due The Creasey Corporation or any of the affiliated houses.

"In testimony whereof, witness the signature of

"The Creasey Corporation

"By ———————

"President

"Dated ———

"Attest: ——————————

"Treasurer."

In 1919, after paying commissions, the company realized net $35,400 from the sale of these service contracts; in 1920, $546,-747.95; in 1921, $503,100; in 1922, $140,-100; in 1923, $7,500; or a net total during that period of $1,047,920.76. All the contracts sold from 1919 to 1923, both inclusive, ran for twenty years. In 1925 the company realized from the sale of fifty-year contracts a net of $2,381.01; in 1926, $5,-324.41; in 1927, $20,133.29; in 1928, $11,-629.64. In 1928 the company also realized a net of $6,096.90 from the sale of ten-year service contracts.

The sums realized from the sale of these contracts were not reported by the plaintiff as income, but were treated as additions to capital. Plaintiff's 1928 return was a consolidated return, and included its income and deductions and the income and deductions of ten affiliated corporations. This return showed a consolidated net income of $3,978.-93, on which it paid a tax of $117.47. In October, 1930, the Commissioner of Internal Revenue redetermined plaintiff's consolidated taxable income for the year 1928, and through elimination of deductions and by additions to income found that the total net income of the taxpayer for the taxable year was $95,339.14. The plaintiff was required to pay the tax on the additional income thus determined.

In arriving at the income upon which the additional tax was collected, the Commissioner treated all the sums which had been received from the sale of service contracts up to and including 1928 as income, and not as additions to capital, and allotted to the year 1928 such a part of the total sum collected on each type of contract as results from dividing such total sum by the full life of the contract. Thus of the net total of $1,047,920.76 received by the plaintiff from the sale of twenty-year service contracts during the period from 1919 to 1923, both inclusive, the Commissioner allotted to the year 1928 one-twentieth of such total, amounting to $52,396.04. Of the net total of $39,468.43 received by the plaintiff on account of the sale of fifty-year contracts in the period extending from 1925 to 1928, both inclusive, he assigned one-fiftieth thereof, or $789.37, to the year 1928, and, of the net sum of $6,096.90 received by the plaintiff in 1928 from the sale of ten-year contracts, the Commissioner assigned one-tenth thereof, or $609.69, to the year 1928. As a result of this adjustment the sum of $53,795.10 was added by the Commissioner to the taxable income of the plaintiff for the year 1928.

As I understand the contentions of the parties, the only question now before me is the correctness of the Commissioner's action in thus treating the sums received from the sale of service contracts.

█ I am in thorough accord with the view of the Commissioner that the sums received by plaintiff from the sale of service contracts must be treated as income. The contract gave the owner thereof no interest whatever in the company. It merely entitled him to the service which plaintiff obligated itself and its affiliates to render. The price of $300 paid for such a contract, it seems to me, must be regarded as the consideration paid in advance for the services contracted to be rendered. It is difficult to understand how money received in exchange for services rendered and to be rendered can be regarded other than as income to the recipient.

█ I am equally clear, however, that the Commissioner was without authority to treat an aliquot part of the sums received in one taxable year from the sale of service contracts as taxable income for subsequent years, as was done in this case. I cannot follow the defendant's contention that the practice of the Commissioner in this case was justified by reason of the fact that plaintiff's books were kept on the accrual basis. I have never understood that, under the accrual method of keeping books, income actually received in one year may be, in part, projected into and allotted to future years. The very converse of this proposition is true; that is to say, under the accrual method income earned during a fiscal year is treated as paid during that year, even though collected in subsequent years. Likewise, under that method of keeping books, obligations are treated as paid during the year in which incurred, even though actual payment may be made in some subsequent year. The very purpose accomplished by keeping books on the accrual plan is to show all income, whether actually paid or merely earned, and all obligations, whether actually paid or merely incurred, as though they were cash transactions. Furthermore, with the exception of the installment sales provisions of the acts of 1926 and 1928, I know of no provision appearing in any of our income tax laws which authorizes the spreading of income received in one year over subsequent years for taxation.

With the exceptions just noted, beginning with the Revenue Act of 1916 (39 Stat. 756), every federal income statute has required income to be reported for taxation for the year in which received, unless, under methods of accounting permitted under the law, such income is properly accounted for as of a different period. The method of accounting permitted under each of the laws has been the method of accounting which the taxpayer regularly employed in keeping his books, provided such method fairly and clearly reflects the income of such taxpayer. The two methods universally followed have been the actual cash receipts and disbursements method and the accrual method.

It seems to be admitted in this case that the plaintiff has regularly employed the accrual method. No reason appears why such method does not fairly and correctly reflect the income of the taxpayer. Therefore, it seems to me, under the plain provisions of the statute and under plaintiff's accrual method of keeping its books, the sums received from the sale of service contracts were subject to be reported as taxable income for the year in which such sums were paid.

█ It appears from the stipulation of facts that in 1928 plaintiff received $11,629.64 from the sale of fifty-year service contracts. The Commissioner allotted only one-fiftieth of this sum, or $789.37, as income for 1928. It further appears that in 1928 the plaintiff received $6,096.90 from the sale of ten-year service contracts, but the Commissioner in

his redetermination of the tax allotted only one-tenth, or $609.69, to 1928, as income for that year. Inasmuch as these two sums were all received in 1928, and in my judgment must be treated as income for that year, the Commissioner's action in the respects last pointed out should be corrected in order to arrive at a true determination of plaintiff's taxable income for 1928.

When plaintiff's income is adjusted in accordance with this opinion, the income attributable to service contracts for the taxable year 1928, instead of being $53,795.10, as found by the Commissioner, will be $17,726.54.

A judgment conforming to the views herein expressed may be prepared and presented for entry. The stipulation of facts will be treated as the court's finding of facts in this case.