**FEDERAL EMPLOYEES' DISTRIBUTING COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 331–61.**

United States District Court
S. D. California,
Central Division.

June 12, 1962.

Butterworth & Smith, Edward L. Butterworth, Los Angeles, Cal., Dempsey, Thayer, Deibert & Kumler, Albert L. Burford, Jr., Los Angeles, Cal., for plaintiff.

Francis C. Whelan, U. S. Atty., Lillian W. Wyshak, Asst. U. S. Atty., Los Angeles, Cal., for defendant.

MATHES, District Judge.

Plaintiff company brings this action, pursuant to 28 U.S.C. § 1346(a) (1) and § 7422(a) of the Internal Revenue Code of 1954 [26 U.S.C. § 7422(a)], for a refund with interest of Federal income taxes paid for the period July 1, 1956, through December 31, 1957, claiming that membership fees received by plaintiff during that period were improperly taxed as "income" by the Commissioner of Internal Revenue.

The evidence adduced at trial reveals no substantial controversy as to the material facts, which may briefly be stated as follows. Plaintiff, known generally as "Fedco", was incorporated under the laws of California as a nonprofit corporation [see Cal.Corp.Code § 9200] in August of 1949 and, during the period in question, was engaged in the sale of consumer goods at discounted retail prices to its members and their guests at five store and warehouse locations in Southern California. Membership was limited chiefly to government employees.

In return for a fee of two dollars, each qualified applicant received a non-assessable and non-transferable life-membership certificate entitling him, *inter alia*, to enter plaintiff's premises and make purchases at a "discount". No further or periodic payments were called for, since membership for life was acquired by payment of the initial two-dollar fee, subject, however, to revocation "for any cause deemed sufficient" by a two-thirds vote of the Board of Directors.

Regular members, comprising the bulk of the membership, were entitled under plaintiff's by-laws to vote for the election of directors, "all of whom shall be life members of the organization". Each member was also entitled to receive a pro rata share of all corporate assets remaining at the time of liquidation or dissolution. Upon the death of a member, the membership fees were refundable at the option of the estate of the deceased; and, unless refunded, the decedent's spouse would succeed to all privileges of membership, excepting only "the right to vote or hold office or serve on the Board of Directors of this Corporation".

As ground for the refund claimed, plaintiff contends that the membership fees in question constituted a "contribution to the capital" of the corporation within the meaning of § 118 of the Internal Revenue Code of 1954 [26 U.S.C. § 118], or were received "in exchange for stock" pursuant to § 1032(a) of the Internal Revenue Code of 1954 [26 U.S.C. § 1032(a)]; and that, in either case, such fees were exempted from inclusion in plaintiff's gross income. Plaintiff further urges that the membership fees cannot, in any event, be deemed income under the Federal Constitution, since the capital nature of the transactions precludes treating them as "income" within the scope of the Sixteenth Amendment; and so any Federal tax upon these fees would be subject to the further Constitutional requirement that direct taxes must be "apportioned among the several States" [U.S.Const. art. I, § 2, cl. 3], and "in Proportion to the Census" [U.S.Const. art. I, § 9, cl. 4].

In reply, defendant insists that the membership fees must be declared as "income", since they constituted nothing more in substance than payment for services to be rendered. [See Int.Rev. Code of 1954, § 61(a) (1), 26 U.S.C. § 61(a) (1).] In the alternative, defendant further contends that, should such fees not be characterized as "income", then the Government would, in all events, be entitled to recoupment pursuant to § 362(c) (2) of the Internal Revenue Code of 1954 [26 U.S.C. § 362(c) (2)], resulting from a corresponding basis-reduction of depreciable property, namely, "furniture, fixtures, equipment, [and] leasehold improvements" acquired by plaintiff with the proceeds of the fees.

The term "gross income" has been defined as "all income from whatever source derived". [Int.Rev.Code of 1954, § 61(a), 26 U.S.C. § 61(a).] "And the [Supreme] Court has given a liberal

construction to this broad phraseology in recognition of the intention of Congress to tax all gains except those specifically exempted." [Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430, 75 S.Ct. 473, 99 L.Ed. 483 (1955).]

One such exemption is found in § 118 (a) of the Internal Revenue Code of 1954, which provides that "In the case of a corporation, gross income does not include any contribution to the capital of the taxpayer". This provision, without counterpart in any prior Code, was enacted to codify then-existing law as to contributions made by groups or individuals without proprietary interest in a corporation, since in many cases such contributions could neither be deemed gifts nor payments for services, and therefore should not be taxable as income. [See: H.R.Rep.No.1337, 83rd Cong., 2d Sess. at p. a38 (1954); S.Rep. No. 1622, 83rd Cong., 2d Sess. at pp. 18–19 (1954); U.S.Code Cong. and Admin. News 1954, pp. 4042, 4648.] Indeed, Treasury Regulation § 1.118–1 [26 C.F. R. § 1.118–1] declares that "the exclusion [§ 118] does not apply to any money or property transferred to the corporation in consideration for goods or services rendered * * *".

█ Thus, the question of whether a payment to a corporation constitutes a "contribution to the capital of the taxpayer", within the meaning of § 118, is held to turn not only upon what is given or gained in return for the payment, but also upon the motive or purpose and intent of the person making the payment. [See: Brown Shoe Co. v. Commissioner, 339 U.S. 583, 591, 70 S.Ct. 820, 94 L.Ed. 1081 (1950); Detroit Edison Co. v. Commissioner, 319 U.S. 98, 102–103, 63 S.Ct. 902, 87 L.Ed. 1286 (1943); cf. Edwards v. Cuba Railroad, 268 U.S. 628, 632–633, 45 S.Ct. 614, 69 L.Ed. 1124 (1925).] And these criteria have been applied even in cases where the "contribution" of a fixed amount has been found to be at least part-payment for services. [See: Teleservice Co. of Wyo. Val. v. Commissioner, 254 F.2d 105 (3rd Cir.), cert. denied, 357 U.S. 919, 78 S.Ct. 1360, 2 L.Ed.2d 1364 (1958); Denver & Rio Grande Western Railroad Co., 32 T.C. 43, 45–46 (1959), aff'd, 279 F.2d 368 (10th Cir.1960); Warren Television Corp., 17 CCH Tax Ct.Mem. 1053 (1958); cf. United Grocers, Ltd. v. United States, 186 F.Supp. 724 (N.D.Cal.1960).]

█ Here plaintiff concedes that the dominant purpose of applicants for membership in "Fedco" has been to "buy merchandise at pretty good prices"; and it is plain that payment of the membership fees in return for this privilege constituted primarily payment for a direct benefit and service to the members and, as such, was not exempt from taxation as a "contribution to * * * capital" under § 118. [Cf.: Brown Shoe Co. v. Commissioner, supra, 339 U.S. at 591, 70 S.Ct. at 94 L.Ed. 1081; Community T.V. Ass'n v. United States, 203 F.Supp. 270, 272–274 (D.Mont.1962).]

On the other hand, it is equally clear that any gain to plaintiff from receipt of membership fees is not taxable as income, if received "in exchange for stock" of the corporation within the meaning of § 1032(a). The inquiry turns, then, to whether plaintiff's membership certificates, issued in return for the membership fees, evidence "stock" as the term is employed in § 1032.

In this connection, it is first to be noted that plaintiff's memberships were deemed by the California Commissioner of Corporations to be securities under the State Corporate Securities Law [see Cal. Corp.Code § 25008]; and, subsequent to incorporation, plaintiff applied for and received an official permit from the State Commissioner to issue the membership certificates involved herein [see Cal. Corp. Code §§ 25500–25515]. But it is to be borne in mind, nonetheless, that "The definition of words used in federal tax statutes is governed by federal law" [Cunha's Estate v. Commissioner, 279 F.2d 292, 296, (9th Cir.1960), cert. denied, 364 U.S. 942, 81 S.Ct. 460, 5 L.Ed. 2d 373 (1961)]; for:

"It is the will of Congress which controls, and the expression of its

will in legislation, in the absence of language evidencing a different purpose, is to be interpreted so as to give a uniform application to a nationwide scheme of taxation. \* \* \* State law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law". [Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L. Ed. 199 (1932); see Lyeth v. Hoey, 305 U.S. 188, 193–194, 59 S.Ct. 155, 83 L.Ed. 119 (1938).]

■ Inasmuch as no definitive Federal statutory language exists in the present instance, and no compelling Federal statutory implication can be found, which directs application of State law in defining the word "stock", neither the findings of the State Commissioner, nor the pronouncements of Cal.Corp.Code §§ 103 and 115, that "shareholder" and "shares of stock" include membership in nonstock corporations, can be controlling here. Accordingly, it is the duty of this Court to apply Federal law and give the term "stock" its "ordinary meaning", consistent with the policy and purpose of § 1032. [Cf. Little's Estate v. Commissioner, 274 F.2d 718, 727 (9th Cir.1960); see United West Coast Theatres Corp. v. South Side Theatres, 86 F.Supp. 109, 112 (S.D.Cal.1949).]

■ Ownership of shares—"stock"—in a corporation has been characterized as "an individual interest giving the stockholder a right to a proportional part of the dividends and the effects of the corporation when dissolved, after payment of its debts". [First National Bank of Boston v. Maine, 284 U.S. 312, 329–330, 52 S.Ct. 174, 76 L.Ed. 313 (1932), overruled on other grounds, State Tax Commission of Utah v. Aldrich, 316 U.S. 174, 62 S.Ct. 1008, 86 L.Ed. 1358, 139 A.L.R. 1436 (1942).] Also, as an "interest or right which the owner has in the management, profits and assets of a corporation" [Commissioner v. Scatena, 85 F.2d 729, 732 (9th Cir.1936); cf.: Elko Lamoille Power Co. v. Commissioner, 50 F.2d 595, 596 (9th Cir.1931);

Community T.V. Ass'n v. United States, supra, 203 F.Supp. at 274; and see United Grocers, Ltd. v. United States, supra, 186 F.Supp. at 729.] And one which need not be evidenced by any certificate of ownership. [See: In re Penfield Distilling Co., 131 F.2d 694, 698 (6th Cir 1942); Los Angeles Fisheries v. Crook, 47 F.2d 1031, 1035 (9th Cir.1931).]

Guided by these criteria, the conclusion must be that the membership certificates issued by plaintiff represented "stock" within the scope of § 1032. As already noted, plaintiff's regular members were entitled to participate in the management of the corporation through their right, without class distinctions, to vote for directors and to seek corporate office for themselves. Members were also entitled to share pro rata the remaining corporate assets upon liquidation or dissolution. It is significant, too, that there was no requirement that the membership be periodically renewed, or that dues be paid as a condition to continued participation in the affairs of the corporation; for plaintiff's members acquired membership rights for life upon making the single payment of the specified fee.

Moreover, in view of the emphasis given "a uniform application to a nationwide scheme of taxation" [Burnet v. Harmel, supra, 287 U.S. at 110, 53 S.Ct. 74, 77 L.Ed. 199], the conclusion that the membership certificates evidenced ownership of "stock" within the purview of § 1032 is buttressed by the fact that plaintiff was required to purchase stamps representing the Federal excise tax upon "each original issue of shares or certificates of stock, issued by a corporation \* \* \* ". [See Int.Rev. Code of 1954, § 4301, 26 U.S.C. § 4301.]

Distinct and crucial differences appear, therefore, between membership in the plaintiff corporation and those wherein persons pay initiation fees or dues—renewable annually as a rule—to obtain services, without thereby acquiring any proprietary right or interest whatever in the corporation. [Cf.: American Automobile Ass'n v. United States, 367 U.S. 687, 81 S.Ct. 1727, 6 L.Ed.2d 1109

(1961); Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957); Teleservice Co. of Wyo. Val. v. Commissioner, supra, 254 F.2d 105; Keystone Automobile Club v. Commissioner, 181 F.2d 402 (3rd Cir.1950); Automobile Club of New York, Inc., 32 T.C. 906 (1959); and see: United Grocers, Ltd. v. United States, supra, 186 F.Supp. at 736; Chattanooga Automobile Club, 12 T.C. 967 (1949), aff'd, 182 F.2d 551 (6th Cir.1950); United Retail Grocers Ass'n, 19 B.T.A. 1016 (1930).]

The Government points out *per contra* that plaintiff's members were not allowed to share in corporate profits or dividends, and that their rights of participation, including the sharing of assets upon liquidation or dissolution, were neither assessable nor transferable and ceased whenever a membership terminated by death or otherwise. But these negative factors cannot overturn the conclusion that membership in the corporation constituted "stock" within the meaning of § 1032, since the sum of these restrictions upon the rights of members accord with State requirements and policy governing the operation of nonprofit corporations such as plaintiff. [See: Cal.Corp.Code §§ 9200, 9608, 9609.] It has been pointed out, furthermore, that "where taxable situations arise from relationships entered into under state law, their nature and the rights of the parties under such law must be kept in view in determining the incidence of federal taxation". [Ward v. Commissioner, 224 F. 2d 547, 551 (9th Cir.1955).]

Neither does the right of plaintiff's Board of Directors to cancel membership "for any cause deemed sufficient" militate forcefully against the conclusion that plaintiff's membership certificates represented "stock" in the corporation. Although "Memberships may be terminated in the manner provided in the articles or by-laws" [Cal.Corp.Code § 9608], "It is hornbook law that directors, while not strictly trustees, are fiduciaries, and bear a fiduciary relationship to the corporation, and to all the stockholders. They

owe a duty to all stockholders * * * and must administer their duties for the common benefit". [Remillard Brick Co. v. Remillard-Dandini Co., 109 Cal.App. 2d 405, 419, 241 P.2d 66, 74 (1952); see Cal.Corp.Code §§ 820, 9002; cf. Bennett v. Hibernia Bank, 47 Cal.2d 540, 559, 305 P.2d 20, 32 (1956).] Indeed, the disputable presumption "that official duty has been regularly performed" is sustained by the evidence at bar, which establishes that plaintiff's Board of Directors was not abusive of the right to cancel memberships, no revocations at all having been made during the period in issue here. [See Cal.C.C.P. § 1963(15), (33).]

The conclusion that the membership certificates represented "stock" within the meaning of § 1032(a) leaves the question whether further inquiry should be made as to the motive or purpose and intent of the members in paying the fees, as under § 118 with respect to determination of capital contributions.

One possible construction of § 1032 is that the test of "money * * * in exchange for stock" requires examination of the motive which prompted the act and the intent with which the act was done, in order to ascertain whether fees paid for membership certificates, as in the present case, were meant to be "in exchange for stock", or were exchanged for services or other benefits. [Cf. Affiliated Gov't Employees' Distrib. Co., 37 T.C. 909 (1962).]

However, I am of the opinion, for reasons now to be stated, that the proper test in determining recognition of gain or loss under § 1032 is whether "money or other property" was in fact surrendered to a corporation in return for its "stock", without regard to the motive or intent of either party to the transaction. [Compare Community T.V. Ass'n v. United States, supra, 203 F. Supp. 270.]

Section 1032 has no counterpart in the Internal Revenue Code of 1939, and the purpose of its enactment in 1954 was to remove uncertainties in then-existing

law, where recognition of gain or loss was dependent upon "whether the transaction constitutes the dealing by a corporation in its own shares which is to be ascertained from all of the facts and circumstances". [H.R.Rep.No.1337, supra, 83rd Cong., 2d Sess. a268; see: S. Rep.No.1622, supra, 83rd Cong., 2d Sess. 426, U.S.Code Cong. and Admin.News 1954, pp. 4410, 5069; Treas.Reg. 118, § 39.22 (a)—15, 26 C.F.R. § 39.22(a)—15 (1953).]

By the enactment of § 1032, the question of corporate intent or purpose in determining whether or not the corporation was in fact "dealing" in its shares was eliminated as one of the determining "facts and circumstances", in keeping with the statutory pattern that issuance of stock in exchange for property should not generally be made a taxable transaction. [Cf.: Int.Rev.Code of 1954, §§ 305, 351, 354, 355, 361, 1032, 1036, 26 U.S.C. §§ 305, 351, 354, 355, 361, 1032, 1036; United States v. Anderson, Clayton & Co., 350 U.S. 55, 76 S.Ct. 25, 100 L.Ed. 43 (1955); General Electric Co. v. United States, 299 F.2d 942, 945–947 (Ct.Cl.1962); Girard Trust Corn Exch. Bank v. United States, 191 F.Supp. 551 (E.D.Pa.1961).]

By the same token, then, § 1032 should not be construed to require a determination of motive or intent on the part of purchasers of a corporation's stock; otherwise the statutory purpose to objectify the applicable standard with respect to such transactions would be frustrated. Such a standard, as applied to § 1032, is emphasized in Treasury Regulation § 1.1032–1(a) [26 C.F.R. § 1.1032–1(a)], which declares that:

> "The disposition by a corporation of shares of its own stock * * * for money or other property does not give rise to taxable gain or deductible loss to the corporation regardless of the nature of the transaction or the facts and circumstances involved".

In keeping with this view, during the course of trial of the case at bar, evidence of the state of mind of purchasers of plaintiff's membership certificates was excluded under Fed.R.Civ.P. 43(c), 28 U.S.C., on the issue as to whether "stock" transactions under § 1032 had occurred during the tax period in dispute. However, as already observed, such evidence has been held to be relevant to the issue of whether the membership fees were capital contributions within the scope of § 118, and hence has been given weight in reaching the conclusion that the membership fees in question were not exempt as contributions to capital under § 118.

The nebulous criteria of motive and intent are difficult at best to apply in determining the incidence of any tax; and such criteria should never be resorted to unless their utilization is required by the language or prior construction of the particular statutory term or provision involved, as in the determination of a "contribution to the capital" under § 118.

It follows, then, that the membership fees paid to plaintiff during the period in controversy were not excludable from gross income as contributions to capital under § 118, but nevertheless were free from taxation as income, because received "in exchange for stock" under § 1032.

This holding works no conflict in purpose between the provisions of § 118 and § 1032 of the Internal Revenue Code. Nor does it create in § 1032 a shelter to which corporations and others may repair when similar transactions are held not exempt under § 118. For § 118, by its terms, deals solely with contributions to capital and, *ex necessitate*, does not apply where no contribution to corporate capital is intended, and where proprietary rights and interests in a corporation are directly received in return for money. [Cf.: Brown Shoe Co. v. Commissioner, supra, 339 U.S. at 591, 70 S.Ct. 820, 94 L.Ed. 1081; Detroit Edison Co. v. Commissioner, supra, 319 U.S. at 103, 63 S.Ct. 902, 87 L.Ed. 1286; Joy Mfg. Co. v. Commissioner, 230 F.2d 740, 742 (3rd Cir.1956); United Retail Grocers Ass'n, supra, 19 B.T.A. 1016.]

It is true of course that, "when applying the provisions of the Sixteenth Amendment and income tax laws enacted thereunder we must regard matters of substance and not mere form". [Weiss v. Stearn, 265 U.S. 242, 254, 44 S.Ct. 490, 68 L.Ed. 1001 (1924).] The test here held to rule applicability of § 1032 is one of substance, in that basic stock attributes must be shown to exist and to be enforceable by members, before membership in a corporation such as plaintiff may be characterized as "stock".

Plaintiff provided each member with a direct and enforceable corporate right and interest, regardless of the motive or intent of each in purchasing the membership. That such a membership certificate was necessary for entry upon the business premises, that the cost of the membership was minimal, and that by December 31, 1957, membership included as many as 213,095 regular, and 79,904 associate members, all are factors which lead toward the conclusion that membership fees were not intended primarily as contributions to capital pursuant to § 118, but were payments made in return for direct benefits of purchase, as is indicated also by plaintiff's gross sales during 1957 of some 28 million dollars to members and their guests. But these facts are immaterial to the determination that what a member received in exchange for a monetary fee was indeed "stock" within the meaning of § 1032.

Accordingly, the question whether plaintiff's receipt of membership fees could constitutionally be held to be "income" under the Sixteenth Amendment need not be reached and will not be decided, since in all events "no gain or loss shall be recognized" to plaintiff as a result of these transactions by virtue of § 1032. This does justice to the admonition that a Constitutional issue should not as a rule be decided, even though properly presented, "if there is also present some other ground upon which the case may be disposed of". [Ashwander v. Valley Authority, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (concurring opinion); see United States v. Hayman, 342 U.S. 205, 223, 72 S.Ct. 263, 96 L.Ed. 232 (1952).]

Considering the membership fees in question to be subject to Federal income tax, but excluded from inclusion in plaintiff's gross income by virtue of § 1032(a), the further question is presented whether the Government is entitled to recoupment pursuant to § 362 (c) (2) of the Internal Revenue Code of 1954 [26 U.S.C. § 362(c) (2) ], which provides, *inter alia*, that if money:

"(A) is received by a corporation, on or after June 22, 1954, as a contribution to capital, and (B) is not contributed by a shareholder as such, then the basis of any property acquired with such money during the 12-month period beginning on the day the contribution is received shall be reduced by the amount of such contribution * * *".

By its own terms, the above-quoted provision is not applicable at bar, since receipt of the membership fees by plaintiff corporation is not deemed a "contribution to capital", as specified by § 362(c) (2) (A).

Subsection (c) of § 362 is without counterpart in the 1939 Code and, while determination of what comprises a capital contribution should be made "in accordance with the nature of the transaction", this provision is plainly directed to "situations similar to that which have occurred in * * * Brown Shoe Co. v. Commissioner * * * where property was contributed to a corporation by persons other than its shareholders in their capacity as shareholders". [H.R.Rep.No. 1337, supra, 83rd Cong., 2d Sess. a128, U.S.Code Cong. and Admin.News 1954, p. 4266.]

In Brown Shoe Co. v. Commissioner, supra, 339 U.S. 583, 70 S.Ct. 820, 94 L. Ed. 1081, community groups had transferred money and property to the corporation upon agreement that it construct, enlarge and operate factories for a minimum period, as well as meet a minimum payroll in the community. The

Court there held that the assets so acquired constituted "contributions to capital" within the meaning of § 113(a) (8) (B) of the Internal Revenue Code of 1939 [26 U.S.C. § 113(a) (8) (B)], thus requiring "no reduction in the depreciation basis of the properties acquired", in accordance with prior law [339 U.S. at 589, 70 S.Ct. at 823]. Detroit Edison Co. v. Commissioner, supra, 319 U.S. 98, 63 S.Ct. 902, 87 L.Ed. 1286, involving "contributions" by applicants for electrical service which were in fact found to be "the price of the service", was distinguished by the Court on the ground that "Since in this case there are neither customers nor payments for service, we may infer a different purpose in the transactions between petitioner and the community groups". [339 U.S. at 591, 70 S.Ct. at 824.]

Thus the factors employed to determine what is and what is not a "contribution to capital" are the same under both § 118 and § 362 [cf.: H.R.Rep.No. 1337, supra, 83rd Cong., 2d Sess. a38, a127–128; S.Rep.No.1622, supra, 83rd Cong., 2d Sess. 18–19], since § 362 merely sets forth the rules for computation of basis to corporations of property acquired, *inter alia*, by means of contributions exempted from inclusion as taxable income under § 118. In the case at bar, of course, it has been established that the membership fees were received not as contributions to capital, but rather in exchange for stock.

Furthermore, since taxability of the transactions in controversy at bar is governed by § 1032, it is doubtful that § 362 could be applicable in any event. For aside from the fact that § 362(c) was enacted to deal with situations similar to that of the Brown Shoe Co. case, supra, 339 U.S. 583, 70 S.Ct. 820, 94 L.Ed.

1081, the provisions of § 362 are referred to in § 1032(b) merely with respect to the "basis of property acquired by a corporation in certain exchanges for its stock", none of which apply here. And Treasury Regulation § 1.1032–1(d) sets forth the general rule that "For basis of property acquired by a corporation in a transaction to which section 1032 applies but which does not qualify under any other non-recognition provision, see section 1012" [26 C.F.R. § 1.-1032–1(d)]; which in turn provides that cost, without more, shall be the basis as to such property.

The conclusion that § 362(c) (2) is inapplicable because the fees involved cannot be termed a "contribution to capital", makes it unnecessary to decide whether the requirement of § 362(c) (2) (B)—that money from receipt of membership fees be "not contributed by a shareholder as such"—is satisfied in the circumstances at bar, nor whether plaintiff has established what property was "acquired" with such fees. [See Treas. Reg. § 1.362–2(a), 26 C.F.R. § 1.362–2(a).]

Accordingly, plaintiff is entitled to a refund of income taxes and interest paid upon the membership fees received during the tax period in question, and defendant's counterclaim for recoupment must be denied.

Judgment will therefore be entered in favor of plaintiff, together with interest in accordance with § 6611 of the Internal Revenue Code of 1954 [26 U.S.C. § 6611], each party to bear own costs.

The foregoing shall serve as findings of fact and conclusions of law [Fed.R. Civ.P. 52(a)], and plaintiff will lodge an appropriate judgment with the Clerk, to be settled pursuant to Local Rule 7, West's Ann.Code, within five days.