In the Matter of the Application of JOSEPH B. MILLER, as Trustee, Petitioner, for an Order Directing the Payment by 325 EAST 72ND STREET, INC., Respondent, of the Surplus Income, or Such Part Thereof as the Court May Determine, to the Said Trustee as Mortgagee, to Be Applied Toward the Reduction of the Past Due Principal on the First Mortgage Covering Premises 325 East 72nd Street, New York, New York, and Known as Guarantee No. 206,552 of the Bond and Mortgage Guarantee Company, Pursuant to Section 1077-c of the Civil Practice Act of the State of New York.

Supreme Court, Special Term, New York County, March 1, 1940.

*Smith, Chambers & Clare* [*Gerald FitzGerald* of counsel], for the petitioner.

*James S. Regan* [*Thomas J. Kavanagh* of counsel], for the respondent.

BERNSTEIN, J.   This is an application by the holder of a $400,000 first mortgage, which matured on March 20, 1933, to obtain the surplus income of the premises securing the mortgage for the six months' period from January 1, 1939, to June 30, 1939, pursuant to section 1077-c of the Civil Practice Act.

The property consists of a so-called co-operative apartment building containing fifty-seven apartments and 238 rooms.   It is owned by the respondent, 325 East 72nd Street, Inc., a corporation which sold its stock to various individuals and gave them ninety-nine-

year proprietary leases to the several apartments in the building. Under the terms of their agreements these proprietary lessees pay a monthly assessment, fixed on a *pro rata* basis, in an amount sufficient to pay all the necessary charges for the operation and maintenance of the building, but no more. This, of course, includes taxes and interest on the mortgage but no amortization, since the mortgage called for no such amortization. Thirty-two of the fifty-seven apartments are subleased by the proprietary lessees to other tenants on a commercial basis, under restrictive conditions fixed by the proprietary leases, and these, it is claimed, produce a monthly profit for such proprietary lessees of an average of four dollars and fifty-four cents per room. They produce no profit whatsoever for the corporate owner and, it is conceded, such corporate owner has in fact had no actual surplus income during the six months' period in question.

In pressing this application the petitioner contends that, based on the rents paid by the sublessees of these thirty-two apartments, each of the fifty-seven apartments in the building has a monthly rental value per room of four dollars and fifty-four cents more than that fixed by the assessment levied against the proprietary lessee of such apartment, and that, as so calculated, all of the fifty-seven apartments have an aggregate rental value, for the six months' period, of $8,483.12 in excess of the assessments levied on and paid by the proprietary lessees under the terms of their agreements. This excess rental value, says the petitioner, represents the surplus income which is applicable to the reduction of the principal of the past due mortgage. While the rental value as thus calculated is disputed, a finding thereon is, in the view of the application taken by the court, entirely unnecessary to the decision.

Although the statute (§ 1077-c) in terms authorizes a direction of payment if it shall appear that the mortgaged property "shall have produced a surplus," the language has been held broad enough to require the owner to render an account of the use being made of the premises and of the fair and reasonable rental value of that part thereof which is occupied by such owner in his business. (*Matter of Mortgage Commission* v. *Muller Paper Goods Co.*, 256 App. Div. 301; affd., *sub nom. Matter of Manufacturers Trust Co.* v. *Muller Paper Goods Co., Inc.*, 281 N. Y. 780.) In seeking relief here, the petitioner is relying largely upon that case.

That case is distinguishable from the case presented here on the facts. In that case the mortgaged property consisted of a six-story concrete factory and loft building. Two of the six floors were occupied by a tenant paying a substantial rent. The remaining floors were occupied by the owner in connection with its business of manu-

facturing paper products. In calculating the income from the property the owner made no allowance for the part of the building which it occupied, and the mortgagee made application to fix the reasonable rental value thereof and to order the owner to pay the surplus income as thus increased toward the reduction of the mortgage. By a divided court, the Appellate Division (Second Department) directed the Special Term to take proof and fix the reasonable rental value of the part of the mortgaged property occupied by the owner in the conduct of its manufacturing business and to include such rental value as income received from the property. On appeal to the Court of Appeals the certified question presented was: " In this proceeding, in ascertaining if surplus was produced pursuant to section 1077-c, Civ. Prac. Act, was it proper for the Special Term *to refuse to include,* as an item tending to produce surplus, the reasonable value of the use and occupation of that part of the mortgaged property *occupied by the owner in the conduct of its manufacturing business?"* (Italics supplied.) The question was answered in the negative by a vote of four to two and without opinion. In answering that particular question the Court of Appeals did not, in the opinion of this court, intend to extend the scope and meaning of the statute to such a case as is presented here.

In the instant case the premises involved are not occupied by the owner but by third parties who have contractual relations with the owner. These parties are not occupying the premises rent free but pay sums which, at the date of their leases, were undeniably fair and reasonable and which, even now, are ample to cover all operating and maintenance charges. In such a situation, the creation of a surplus by the artifice suggested by the petitioner would " give to the mortgagee a security beyond the stipulations of the mortgage and deprives the occupants of their enjoyment of rights secured by contract." (*Prudence Co., Inc.,* v. *160 West 73d Street Corp.,* 260 N. Y. 205, 212.)

The corporate owner here was organized as a vehicle for the establishment of a community of homes rather than for the purpose of pecuniary profit to the stockholders. The primary interest of every stockholder was in the long-term proprietary lease. The stock was incidental to that purpose and afforded the practical means of combining an ownership interest with a method for sharing assessments for operation and maintenance proportionately. (*Penthouse Properties, Inc.,* v. *1158 Fifth Ave., Inc.,* 258 App. Div. 685.) The certificate of incorporation of the respondent, the prospectus under which the stock was offered, the stock subscription agreement, the payments made thereunder and the proprietary lease itself, must all be read together to determine the relationship between the corporate

owner and the proprietary lessee. (*Manufacturers Trust Co.* v. *Steinhardt*, 265 N. Y. 145; *Tompkins* v. *Hale*, 172 Misc. 1071.) These establish the proprietary lessee not as an owner but as a third party having distinct rights against and distinct obligations toward the owner.

One of these rights is the right of the proprietary lessee to occupy the apartment leased to him upon the payment of a sum equal to his *pro rata* cost of operation and maintenance of the building. That right is as conclusive against the mortgagee as it is against the owner. (*Prudence Co., Inc.,* v. *160 West 73rd Street Corp., supra; Markantonis* v. *Madlan Realty Corp.,* 262 N. Y. 354, 356; *Bank of Manhattan Trust Co.* v. *2166 Broadway Corp.,* 237 App. Div. 734, 737.) The statute does not indicate a legislative intent to impair such a right and should not in any event be strained to produce such an unreasonable result.

The motion is accordingly denied.