In re 325 EAST 72ND STREET, Inc.

No. 82556.

District Court, S. D. New York.

Feb. 8, 1944.

Richard L. Rosenbaum, of New York City, for debtor.

James A. Beha, of New York City, for Thomas J. V. Cullen, trustee.

Chambers, Clare & Morris, of New York City (Gerald Fitzgerald, of Tarrytown, N. Y., and Albert R. George, of New York

City, of counsel), for Joseph B. Miller, mortgage trustee and answering creditor.

Davies, Auerbach, Cornell & Hardy, of New York City (Herbert A. Heerwagen, of New York City, of counsel), for Chase Nat. Bank as trustee, etc.

Coudert Brothers, of New York City (Francis D. Wells, of New York City, of counsel), for Elizabeth Field Whittlesey and William Hill Field.

BRIGHT, District Judge.

Joseph B. Miller, an indenture trustee for the benefit of certificate holders under a mortgage secured by the premises at the above address, and acting as such under a declaration of trust dated February 25, 1937, executed pursuant to a final order of the New York Supreme Court dated February 8, 1937, made in proceedings conducted under the Schackno Act, N.Y.Laws 1933, Ch. 745, as amended, McK. Unconsol. Laws, § 4871 et seq., seeks to have vacated an order, made on June 3, 1943, approving the petition of the above debtor filed on May 29, 1943 in proceedings under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq., upon the sole ground that the petition was not filed in good faith.

The mortgage trustee, by his answer, alleges that the amount due upon the mortgage held by him is $414,166, denies, among other things, that the land and building of the debtor have a fair value of $455,000, as stated in the petition, and pleads as defenses, that the petition was not filed in good faith because (1) the fair value of the property is substantially less than the amount due upon his mortgage, there is no equity to be salvaged or reorganized, the debtor had failed to pay the mortgage of $400,000, which became due on March 20, 1933, or any part thereof, or to pay amortization installments of $1,000 each due on the first days of October, 1942, and January, April, and July, 1943, and interest in excess of $14,000; (2) that the debtor had failed at any time to present any proposal for a reorganization of the mortgage; (3) that the need for relief under the provisions of Chapter X was not shown, in that the mortgage trustee is the sole creditor and there are no junior interests; (4) that it is unreasonable to expect that a plan of reorganization can be effected because the income of the property is insufficient to pay current and fixed charges, including interest, that the amount of the mortgage and interest exceeds $414,000, that the fair value of the property is not in excess of $350,000, and no possible plan could be proposed which would provide adequate protection for realization by the certificate holders of the value of their interests; and (5) that the interest of creditors and stockholders would best be subserved in the Schackno proceeding and the pending proceeding in the New York Supreme Court to foreclose the mortgage which was instituted primarily for the protection of the rights of the certificate holders under the mortgage.

These facts are not disputed. The debtor is the owner and operator of a cooperative apartment house located in New York City at the above address. The building was completed early in 1927 and is a sixteen story modern, garden apartment house, of about two hundred and forty rooms, and fifty-eight apartments, together with six maid rooms and a four room superintendent apartment. Originally, the building was planned as one hundred per cent. cooperative. Under that plan, tenant owners were required to purchase stock which carried with it the right to a proprietary lease for ninety-nine years, at an annual rental of $1 per share plus such assessments on the stock as might be required to operate and maintain the building; these assessments to include cost of management, taxes, "mortgage interest and amortization", water rentals, insurance, repairs, etc., "and the proportionate amount necessary to provide an annual reserve fund as a safeguard against any unexpected or extraordinary expense". Until January, 1943, the Walton Hall Construction Company, which erected the building, owned twenty-one proprietary leases covering twenty-one apartments, but those leases were in that month cancelled because of the failure of the company to pay assessments. At the time the petition here was filed, there were still twenty-three apartments used by proprietary lessees. The principal liability of the debtor is the past-due mortgage of $400,000, and five per cent. interest thereon since April 1, 1943, less $2,500 paid on account by the debtor.

It is also undisputed that in the prior proceedings under the Schackno Act, the bond and mortgage in question were assigned to the mortgage trustee, and the order approving the plan of reorganization there contained a provision that the state court proceeding should remain open and the court retain jurisdiction until the complete liquidation of the trust estate and the ter-

mination of the trust, and that the trustee, or any other party to the proceeding, might apply at the foot of the order for other and further relief as to the court might seem just and proper.

After this proceeding was commenced by the filing of a petition on May 29, 1943, and the signing of the order approving the same on June 3, 1943, the mortgage trustee on June 4, 1943 filed a notice of pendency in the New York Supreme Court in an action brought by him to foreclose the mortgage, and on that day he was appointed receiver of the rents and profits to serve without compensation during the pendency of the action; and after qualifying as such, he visited the mortgaged premises and found that possession thereof had already been taken by the trustee in this proceeding.

The mortgage trustee, after his appointment, made annual inventories and accountings to the state court. It appears from them that the debtor has always been slow in the payment of interest and that the trustee has acquiesced therein, so that the taxes could be promptly paid and all of them had been paid at the time of the commencement of this proceeding. In 1937 the debtor made application for an extension of the mortgage and a reduction of interest and the certificate holders, after a meeting, refused the application. It was shown without dispute that as a condition for the extension and reduction of interest, the mortgage trustee presented to the owner a proposition that he would recommend to the court and to the certificate holders, a reduction of interest from five per cent. to four per cent., and an extension of the mortgage, if they would pay $50,000 on account of principal, and also agree to amortize the balance at two per cent. annually. The owner at that time was in no position to meet that proposition. In 1938 and 1939, the mortgage trustee had audits made of the debtor's accounts, and commenced proceedings in the state court under Section 1077-c of the Civil Practice Act, to compel the debtor to pay its surplus of income, if any, in amortization of the principal debt. No surplus income of any amount was found. It was contended, however, in those proceedings by the mortgage trustee, that the proprietary leasees were paying less for their apartments than could be obtained on commercial leases, and that those apartments should be valued at the commercial rates, in which event the building would throw off something like a $6,000 surplus per annum, which could be applied in reduction of the mort-

gage debt. That contention was unsuccessful. Matter of Miller v. The 325 East 72nd Street, Inc., 173 Misc. 347, 18 N.Y.S.2d 59. The mortgage trustee in 1941 reported against an appeal from that decision, stating, in substance, that the prospects of reversal were remote, and even if successful, the court would have to fix a fair rental value for the proprietary lessees, from which would be deducted an increased cost of painting, decorating and upkeep of the apartments, not then charged in making up assessments because those lessees were obliged to make their own repairs, etc. He stated that he had been advised by counsel that no action should be taken. In 1943, just before the commencement of this proceeding, he further reported that he had tried to sell the mortgage, without success, and against a foreclosure of the same, for the reasons that many of the proprietary lessees had paid large sums for their stock and lease, were financially responsible for assessments even though the premises were not occupied, and "because of this condition and the fact that rental conditions in this building are not favorable, the trustee has not been anxious to resort to foreclosure which would terminate the present leases and necessitate enormous expenditures for repairs, refrigeration, ranges, and other equipment in the premises before they could be rented on a paying basis. It is the considered opinion of the trustee that if foreclosure were resorted to, the expenditures necessary to rent the building commercially would prevent the payment of interest for a considerable period of time, and that the prospect of obtaining a larger income than at present is extremely doubtful".

The certificate holders, since the appointment of the mortgage trustee in 1937, have received on their certificates four and one-half per cent. in that year, and in 1938, four and three-quarters per cent. in 1939, 1940 and 1941, and four per cent. in 1942. The building is now completely rented, the defaulted proprietary leased apartments being now occupied and paying rent on a commercial basis.

Two recent cases in the Supreme Court are cited against the continuance of the present proceeding—Marine Harbor Properties, Inc., v. Manufacturers Trust Co., 317 U.S. 78, 63 S.Ct. 93, and Fidelity Assurance Association v. Sims, 318 U.S. 608, 63 S.Ct. 807.

The Fidelity case commands a realistic view in determining whether the statutory

test of good faith has been met by a showing in the petition that it is not unreasonable to expect that a plan of reorganization can be effected and that in a prior pending proceeding in another court the interests of creditors and stockholders would not be best subserved. It was admitted there that the debtor was insolvent, and the contention, that even if liquidation was all that could be hoped that could be better managed in bankruptcy than in several separate state court proceedings, was definitely answered that resort to Chapter X could not be had for the mere purpose of liquidation. Its similarity to the present is not otherwise obvious.

The Marine Harbor case is more nearly controlling. One important difference between that and this is that here it is not admitted that the property involved is less in value than the mortgage, but here there exist rights of proprietary lessees and stockholders, who have invested moneys in what might be termed the ownership and improvement of apartments, whose relationship with the debtor is upon an entirely different basis than that of other lessees under commercial leases. Here, too, an answer was filed pursuant to § 137 of the Bankruptcy Act by the indenture trustee, and upon the issues presented thereby oral testimony was introduced in his behalf and that of the debtor under § 143. It was there decided, in view of the conceded fact that the property of the debtor was worth less than the amount of the first mortgage debt, that the rights of certificate holders under that mortgage could not be diluted by junior creditors or equity interests, and therefore, foreclosure of that mortgage, even though it would result in an appropriation of the assets of the debtor for the exclusive benefit of certificate holders, was not a sufficient showing of "need for relief" under § 130 (7), or that the interests of creditors and stockholders would not be best subserved in the state court, § 146(4); and thus there was a lack of "good faith". It was also decided that even if it appeared that the debtor was seeking to escape the jurisdiction of the State Court to which it had voluntarily submitted, that was immaterial in the determination of its "good faith". It was stated, in view of the deficiency of assets under the mortgage, that any plan of reorganization would not be fair and equitable which admitted stockholders to participation unless they made a fresh contribution reasonably equivalent to their proposed participation. It was also stated that ap-

proval of a petition would be justified if there was a showing that the property was worth more than the mortgage indebtedness and the excess value would be lost to the junior interests in the state proceeding, or that the state proceedings were less adequate by reorganization standards than the bankruptcy court to protect such interests.

I am required to determine (1) whether the petition complies with the requirements of Chapter X, (2) if it has been filed in good faith, and (3) if its material allegations are sustained by proofs. § 143.

■ Whether a plan is feasible, it seems to me, is a subject for subsequent inquiry and determination, after a trustee has investigated the debtor's financial condition, business and desirability of continuance thereof, has given the creditors and stockholders an opportunity to submit suggestions to a plan, § 167, and has submitted to the court his own conclusion upon the subject. § 169. It has been so held. In re Marine Harbor Properties, 2 Cir., 125 F.2d 296–298; R. L. Witters Associates v. Ebsary Gypsum Co., 5 Cir., 93 F.2d 746–748; In re Julius Roehrs Co., 3 Cir., 115 F.2d 723, 724; In re Geiser Mfg. Co., D.C., 18 F.Supp. 506–508.

■ The inquiry can be narrowed. I think the petition as filed, as a pleading, complies with the requirements of Section 130 of the Bankruptcy Act. The question of good faith arises only under subdivisions 3 and 4 of Section 146. Where a prior proceeding is pending in the state court, as here, it must be proven that the interests of creditors and stockholders would not best be subserved in that proceeding. I have no hesitancy in deciding that the interests of the proprietary leaseholders and stockholders could not be. That has been so decided in Matter of Miller v. 325 East 72nd Street, Inc., 173 Misc. 347, 18 N.Y.S.2d 59, with reference to this very building.

There remains then whether it is unreasonable to anticipate that a plan of reorganization can be effected. Here that question, both under the Marine Harbor case, the Bankruptcy Act, and the evidence, would seem to be confined largely to whether the property of the corporation exceeds in value the mortgage upon its real estate, and the earning power of the property.

■ The availability of Chapter X does not depend upon whether the debtor is solvent, or insolvent. It is offered to a corporation before or after bankruptcy inter-

venes. Sections 127, 128. The corporation may be insolvent, or unable to pay its debts as they mature. Section 130(1). It may be in an equity receivership or a party to a mortgage foreclosure. Section 148. If it is reasonable to suppose that a plan of reorganization can be effected and that in any prior proceeding the interests of creditors and stockholders would not be best subserved, Section 146(3, 4), the haven of reorganization would seem to be open. The purpose of the Act was to avoid the consequence to debtors and creditors of foreclosures, liquidations and forced sales with their drastic deflationary effects. Case v. Los Angeles Lumber Products Co., 308 U. S. 106–124, 60 S.Ct. 1, 84 L.Ed. 110. The Act seeks to preserve going concern values so that they will be available for the payment of claims against the debtor and for the protection of its interests. In re Dover Boiler Works, D. C., 38 F.Supp. 701–704. The earnings, present and prospective, are a sine qua non. Consolidated Rock Products Co. v. Du Bois, 312 U.S. 510–525, 61 S.Ct. .675, 85 L.Ed. 982; and the valuation for reorganization purposes based on earning power requires a prediction of future events, an estimate as distinguished from mathematical certitude. Compromise settlements and concessions are a normal part of the reorganization process. Group of Institutional Investors v. Chicago, Milwaukee, St. P. & P. R. Co., 318 U.S. 523–542–565, 63 S.Ct. 727. And as already stated, the fact that the debtor is seeking to escape the jurisdiction of the state court is not the test which Congress has provided in Section 146(4), and is immaterial to that inquiry. Marine Harbor case, 317 U.S. at pages 84, 85, 63 S.Ct. 93.

There was the usual disagreement between the experts as to the fair and reasonable market value of the property, the estimates ranging from $340,000, of which $80,000 was for the land, to $455,000, of which $110,000 was for the land. The assessed value is $575,000, of which $120,000 is for the land. I have no hesitancy in finding that the value of the property exceeds the amount of the mortgage debt. It is not necessary, as I view it, for me to find the value with "mathematical certitude". Four methods were employed by the witnesses in their opinion testimony as to value— (1) based on a capitalization of net earnings, (2) on a certain percentage of the assessed value, (3) as fixed by a multiplication of the gross rents, the factor used in the multiplication varying, and (4) the reproduction value less depreciation. Any of these theories, in my opinion, will result in a value exceeding the mortgage debt. In making the comparison from the evidence, I have used round figures:

| | |
|---|---:|
| The actual gross rents were | $ 76,000. |
| This amount is based on the actual receipts from the proprietary lessees. It is agreed by all of the experts that the receipts from the proprietary apartments are less than what could be obtained on commercial leases to the extent of | 5,000. |
| | 81,000. |
| There is no proof as to what the actual expenses were. But from the 1077c proceedings brought by the mortgage trustee, they averaged before taxes and interest $31,500. From the gross rents should be deducted the estimated expenses—a mean between two extremes of the expert witnesses | 39,000. |
| Leaving a net before taxes and interest of | 42,000. |
| From these figures there should be deducted taxes of | 17,480. |
| Leaving | 24,520. |
| And if interest is deducted, we have a net of | 20,000. |
| | 4,520. |
| If the net before interest is capitalized at 5%, the value of the property would be | 490,400. |
| If at 6% | 408,600. |
| If we deduct 25% of the assessed value of $575,000 we have | 431,250. |
| If we multiply the gross rents of $81,000 by five, another mean between the two extremes, we reach a value of | 405,000. |

And on the basis of a reproduction value at 60¢ per cubic foot $528,000. Less sixteen years depreciation at 2% 168,960.

| | | |
|---|---:|---:|
| | | 359,040. |
| to which should be added the value of the land | 100,000 | 459,040. |

From the average of these five figures, which was the method used by two of the experts, we have as a result $438,000, which approximates, in my opinion, if a finding is necessary upon the subject, the fair market value of the property.

The surplus rents, after the payment of taxes and interest as above, is $4,520, which would be sufficient to meet the present annual statutory rate of amortization added by Chapter 782 of the New York Laws of 1941 which amended Section 1077-g of the Civil Practice Act. In view of the obvious disparity of the actual value of the property and the assessment by the City of New York, there would seem to be a real opportunity for a further saving in taxes, and there are three or four certiorari proceedings now pending to obtain that relief. If a saving in interest can be obtained (and it would seem to me that in view of the fact that prime bond investments now yield not to exceed 3%, some relief may fairly be contemplated), that would still further increase the surplus which could be devoted to an amortization of the mortgage debt.

And the stockholders and proprietary lessees, through the president of the debtor, have offered to make a fresh contribution to assist in the consummation of a plan of reorganization. It is true that no definite figure was offered but that was because it is impossible now to determine just what the need will be. Their willingness in the matter can best be tested when the time to decide that question arrives.

Foreclosure, if permitted to continue, will obviously wipe out all interests except those of certificate holders. Every one agrees that if there were a forced sale, it would be at a price far below the actual value of the property. The mortgage trustee would be bound to buy in, unless he were willing to sacrifice the principal of the certificate holders. The foreclosure would necessarily stop the payment of interest, and after a sale there would be a further delay in re-decorating the proprietary apartments and in their re-rental, with a consequent loss of interest over a period of time which nobody can very well estimate. Much of this could be avoided were a plan agreed upon promptly in this proceeding, which I am hopeful will be attempted as soon as possible.

Taking all these matters into consideration, I think that it is reasonable to suppose that such a plan can be effected. That plan might well contemplate a reduction in interest, which the certificate holders could afford to accept, with amortization reducing the mortgage debt and thus increasing the value of their certificates. The proprietary lessees and stockholders could well afford to recognize the equity of the claim that the mortgage debt should be reduced. In fact, their leases recognize that, and it is obvious that from their failure over the period of years since the mortgage was made to make provision in their assessments for such amortization and the creation of a reserve to cover the emergency, they have benefited in reduced rental payments to their own advantage and to the disadvantage of the mortgagee.

Under the circumstances, I think this is clearly a case for an application of the provisions of Chapter X, and that the motion to dismiss the proceeding and to vacate the order approving the petition should be denied.

I find (1) that the petition should be approved; (2) that it complies with the requirements of Chapter X; (3) that it has been filed in good faith; (4) that the debtor is unable to pay its debts as they mature; (5) that there is an adequate showing of the need for relief under Chapter X; (6) that it is not unreasonable to expect that a plan of reorganization can be effective; and (7) that the prior proceeding pending in this court, which is the Schackno proceeding, the foreclosure having been begun after the petition was filed herein, will not best subserve the interest of creditors and stockholders, nor will the foreclosure.

The order to be entered hereon will be settled on notice, and will stay the foreclosure proceeding brought by the mortgage trustee in the New York Supreme Court until the further order of the court herein. Such order shall also provide, pursuant to Section 162, for the retention in office of the trustee already appointed; for compliance with Section 164, not later than ten days after the entry of the order; for full and proper compliance by the trustee with the applicable provisions of Section 167; and for the preparation and filing of a plan or for a report of the trustee's reasons why a plan cannot be effected within a reasonable time to be fixed, pursuant to Section 169.