**Milton I. STOCKTON and Rose R. Stockton, Appellants,**

v.

**Marilyn LUCAS and Norman LeBeau, Appellees.**

No. 2–8.

Temporary Emergency Court of Appeals.
Aug. 15, 1973.

Jacob W. Friedman, New York City, for appellants.

Joseph Gaier, Luster, Gaier & Luster, New York City, for appellees.

Before TAMM, Chief Judge, and HASTIE and VAN OOSTERHOUT, Judges.

VAN OOSTERHOUT, Judge.

Plaintiffs Milton I. Stockton and Rose R. Stockton have taken this timely appeal from order of the United States District Court for the Southern District of New York, entered March 14, 1973, dismissing their amended complaint upon defendants' motion for summary judgment and from order entered March 29, 1973, denying plaintiffs' motion for reargument and reaffirming the dismissal order. Plaintiffs in their complaint sought damages of $9,000.00 for defend-

ants' alleged violation of Phase I price regulations.

Defendants' motion for summary judgment asserts many grounds for dismissal. We will hereinafter elaborate on the grounds thereof which we deem pertinent to this appeal.

■ Defendants filed a cross-appeal from the judgment to the extent that it denied relief upon grounds urged in the motion which were not sustained by the trial court. Such notice was filed on May 17, 1972. This court properly dismissed the cross-appeal upon the ground that it was not filed within the time required by Rule 4(a) F.R.A.P.

The fact that no valid cross-appeal was taken is of no significance under the record made in the case before us. It is well-established law that if the decision of the trial court is sustained by applicable law, the judgment must be affirmed although the trial court relied upon a wrong ground or gave a wrong reason for its decision. Riley v. Commissioner, 311 U.S. 55, 59, 61 S.Ct. 95, 85 L.Ed. 36 (1940); Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1937); Barrett v. Baylor, 457 F.2d 119, 122 (7th Cir. 1972). Our jurisdiction is established by § 211(b)(2) of the Economic Stabilization Act of 1970 as amended.

Defendants filed an affidavit in support of the motion for summary judgment. Plaintiffs filed a resistance to the motion, supported by affidavit. There is no dispute as to any material relevant fact pertinent to the decision of this case. Such facts are summarized by the trial court in its memorandum opinion (not reported) as follows:

"On September 9, 1971, plaintiffs purchased from defendants, for the sum of $18,000.00, 143 shares of a New York corporation, '360 East 72nd Street Owners Incorporated'. Stock certificate No. 582, acquired by plaintiffs, on its face limited transferability in accordance with the by-laws of the corporation, and 'the Proprietary Lease appurtenant thereto'. An en-

dorsement thereon contained the following provisions:

'The rights of any holder of this Certificate are subject to the provisions of the By-Laws of the Corporation and to all the terms, covenants, conditions and provisions of a certain Proprietary Lease made between the Corporation, as Lessor, and the person in whose name this Certificate is issued, as Lessee, for an apartment in the apartment house in the City of New York which is owned by the Corporation and operated as a "co-operative", which Proprietary Lease limits and restricts the title and rights of any transferee of this Certificate.

'The. shares represented by this Certificate are transferable only as an entirety and only as to an assignee of such Proprietary Lease approved in writing in accordance with the provisions of the Proprietary Lease.'

"Ownership of the stock entitles plaintiffs to a proprietary lease of an apartment in the building owned by the Corporation, on paying a ratable share of the expenses and carrying charges, and otherwise complying with all provisions of the corporate by-laws, and after obtaining approval of an owners' committee of the Corporation."

Based upon such facts, plaintiffs sought to recover $9,000.00 from the defendants as damages inflicted upon them by defendants' alleged violation of Phase I of economic laws established by the President by Executive Order No. 11615, effective August 15, 1971, for a period of ninety days under authority of the Economic Stabilization Act of 1970.

Subsequent to the purchase, on December 7, 1971, plaintiffs filed a complaint with the Internal Revenue Service seeking a determination to the effect that the sale price was in excess of that permitted under the Phase I Economic Stabilization Program rules governing real estate transactions. E.S.Reg.No.1, § 2(d), 36 F.Reg. 16515 (Aug. 21, 1971), CCH Economic Controls ¶ 8024.45. On or about March 13, 1972, the IRS ruled by letter that there had been no violation because the transaction in question involved the sale of a stock, exempt from controls under Phase I.[1] E.S.Reg.No.1, § 4, 36 F.Reg. 16515 (Aug. 21, 1971), CCH Economic Controls ¶ 82555. See also CCH Economic Controls ¶ 8060, 8075, 8289.900.[2]

---

1. It would appear that the IRS did not possess the authority to apply this determination to the transaction in this case. At the time the determination was made, the IRS authority was apparently limited to issuing rulings "with respect to prospective transactions" only. 6 C.F.R. § 300.513(c), 36 F.Reg. 23972 (Dec. 16, 1971), deleted in 37 F.Reg. 1007 (Jan. 27 1972, CCH Economic Controls ¶ 3945. Moreover, plaintiffs, without contradiction, allege by affidavit that "the Assistant U.S. Attorney in charge of the case in behalf of the Service [conceded] that the Internal Revenue Service exceeded its authority" in determining that this transaction was a sale of stock. In spite of the fact that the IRS determination is not strictly applicable to this case, we think it is entitled to some weight. It gives some indication of how the IRS would interpret the word "stock". Even though the IRS may not have been free to apply its determination to a completed transaction, we are not prevented from doing so.

Subsequent to the completion of this transaction, the IRS assumed jurisdiction to receive and act on "requests for determinations" and "complaints" with respect to completed transactions. See 6 C.F.R. Ch. IV, part 401, subparts A–D, F, originally enacted in 37 F.Reg. 1010 (Jan. 21, 1972), partially terminated in 38 F.Reg. 2983 (Jan. 31, 1973), CCH Economic Controls ¶ 4201–4219A, 4225–4227. However, this authority exists only "with respect to acts and transactions occurring after November 13, 1971," and thus does not affect this case. See 6 C.F.R. § 401.1(a), 37 F.Reg. 1010 (Jan. 21, 1972), CCH Economic Controls ¶ 4202.05.

2. The exemption was continued after Phase I. See 6 C.F.R. § 101.34(h), formerly § 101.32(h), 37 F.Reg. 21788 (Nov. 13, 1971), amended by 37 F.Reg. 21952 (Nov. 17, 1971) and 37 F.Reg. 1237 (Jan. 27, 1972), CCH Economic Controls ¶ 3531.40; 6 C.F.R. § 101.2, formerly §

Plaintiffs originally filed this suit in April 1972 as a joint action against the present defendants, Marilyn Lucas and Norman LeBeau, and the Internal Revenue Service. The trial court dismissed the suit upon the ground plaintiffs had failed to exhaust their administrative remedies. Plaintiffs appealed to this court from such order.

Subsequent to the filing of the notice of appeal, plaintiffs moved this court "to remand the case . . . for the purpose of permitting plaintiffs to seek . . . an amendment or modification of [the July 24] order . . . ." The basis for this motion was plaintiffs' then recent discovery of 6 C.F.R. § 300.-513(c), 36 F.Reg. 23972 (Dec. 16, 1971), deleted in 37 F.Reg. 1007 (Jan. 21, 1971), which limited the scope of IRS rulings to "prospective transactions." Plaintiffs stated this provision "was apparently overlooked by those concerned, including the District Court." We granted the motion to remand.

On October 24, 1972, the District Court, with the consent of all parties, modified its July 24 order by adding the following provisions:

"The plaintiffs shall have leave, if so advised, to serve and file an amended complaint, on or prior to November 14, 1972, setting forth such claims, if any, as they may have against defendants Marilyn Lucas and Norman LeBeau only, arising out of the transactions referred to in the original complaint. Defendant Internal Revenue Service is dropped as a party defendant, and all future proceedings shall be conducted without notice to it. The amended complaint shall set forth the basis of jurisdiction of this Court, as required by Rule 8(a)(1), F.R.Civ. P. and shall disclose the basis for plaintiffs' claims."

Upon stipulation of the parties, the prior appeal to this court was dismissed on November 6, 1972.

On November 3, 1972, plaintiffs filed the amended complaint now before us, which we have heretofore summarized, against defendants Lucas and LeBeau.

Defendants' motion for summary judgment is based upon many grounds, including: (1) Failure to state a claim upon which relief can be granted; (2) the alleged complained of transaction was not within the prohibition of the Economic Stabilization Law and/or the Phase I regulations promulgated thereunder in that the sale of the stock in a co-operative corporation was not a regulated transaction.

The trial court's dismissal of the action is based upon its determination that no private right of action in favor of a party was created by the Economic Stabilization Act of 1970 or the Phase I Executive Order issued thereunder and the accompanying regulations issued pursuant thereto. The court also implicitly determined that § 210(a) of the Economic Stabilization Act Amendments of 1971, adopted subsequent to the transaction here in question, does not create a remedy through retroactive application.

In our view, the threshold issue here presented is whether the defendants were in fact guilty of Phase I violations in making the transfer hereinabove described. For the reasons hereinafter stated, we hold that under the undisputed facts the transaction here involved constituted a sale of stock and that no violation has been established. Consequently, we deem it unnecessary for us to reach the more complex and controversial problem of whether the dismissal was proper upon the ground stated by the trial court.

Section 4 of E.S.Reg.No.1, effective August 21, 1971, to the extent here pertinent, holds:

"Prices of the following categories of goods and services are not subject to the provisions of Executive Order No. 11615 and this regulation: .

\* \* \* \* \* \*

101.51, 36 F.Reg. § 21788 (Nov. 13, 1971), recodified in 37 F.Reg. 1237 (Jan. 27, 1972), CCH Economic Controls ¶

3513.80; 6 C.F.R. § 130.33(h), 38 F. Reg. 1479 (Jan. 12, 1973), CCH Economic Controls ¶ 35,044.40.

(2) Stocks and bonds." 36 F.Reg. 16515 (Aug. 21, 1971) CCH Economic Controls ¶ 8255.

Such exemption regulation was in full force at the time of the transaction here involved.

The sale price of real estate is frozen for the Phase I period here applicable. Economic Stabilization Regulation No. 1, Chapter I, § 2(d), supra. Thus, if the subject matter of the sale here involved is stock, it is exempt from prior controls. Coverage exists only if the subject matter is real estate.

■ The trial court held the subject matter of the sale to be real estate. We disagree with such conclusion. The decisions cited by the trial court do not support its conclusion and the reasoning underlying the decision is not persuasive.

Stock has been described "as an 'interest or right which the owner has in the management, profits and assets of a corporation . . .'" or as "'an individual interest giving the stockholder a right to a proportional part of the dividends [if any] and the effects of the corporation when dissolved, after payment of its debts.'" Federal Employees' Dist. Co. v. United States, 206 F.Supp. 330, 334 (S.D.Cal.1962). "'The characteristics of *stock* are a right to participate proportionately in all profits [if any], and in management, and in the distribution of net assets on liquidation. . . .'" United States v. Evans, 375 F.2d 730 (9th Cir. 1967). See also Prentis v. United States, 273 F.Supp. 449, 476 (S.D.N.Y.1964); Carlberg v. United States, 281 F.2d 507, 513–14 n. 8 (8th Cir. 1960). "A share of stock is a unit of interest in a corporation . . . . Shares of stock constitute property distinct from the capital or tangible property of the corporation. . . . The capital is the property of the artificial person, . . . the shares of stock are the property of the several stockholders." 18 Am.Jur. Corporations § 209. The fact that the entire capital stock of a corporation is invested in realty does not alter the char-

acter of the shares of stock as personalty. See id. n. 9. In short, stock is incorporeal personal property representing a capital interest in a corporation.

■ Restrictions on the right to transfer are permitted under New York law and do not alter the characterization of the property as stock. See Ryan v. J. Walter Thompson Co., 322 F.Supp. 307 (S.D.N.Y.), affd., 453 F.2d 444 (2d Cir. 1971); Globe Slicing Mach. Co. v. Hasner, 333 F.2d 413 (2d Cir. 1964), cert. den., 379 U.S. 969, 85 S.Ct. 666, 13 L. Ed.2d 562 (1965); Mathews v. United States, 226 F.Supp. 1003 (E.D.N.Y. 1964); Penthouse Properties, Inc. v. 1158 Fifth Ave., Inc., 256 App.Div. 685, 11 N.Y.S.2d 417 (1939).

The District Court states, and we agree, that the issue is "whether what was sold was in fact an interest in realty or stock." The court held the transaction in this case to be a sale of realty and cited Penthouse Properties, Inc. v. 1158 Fifth Ave., Inc., supra, as supporting authority. While we agree with the District Court that "we need not be bound by New York State decided cases concerning co-operative apartments," it is clear to us that neither Penthouse nor any other New York case supports the holding that this transaction was a sale of realty rather than stock. In fact, the New York cases seem to be precisely to the contrary.

The issue in Penthouse involved the validity of various restraints on the transfer of stock in a co-operative corporation. The facts in Penthouse were similar to those in the instant case. The court in Penthouse held only that the "restraint on alienation of the stock [was] reasonable and appropriate to the lawful purposes to be attained," and that such stock was "not included in the general rule against restraint on the sale of stock in corporations organized for profit." 11 N.Y.S.2d at 423. The court in Penthouse did not hold that a sale of shares of stock in a co-operative corporation was in fact a sale of realty. Nor do any of the three New York cases cited in plaintiffs' reply brief reach such a result. See 1165 Fifth Ave. Corp. v. Al-

ger, 261 App.Div. 608, 26 N.Y.S.2d 671 (S.Ct.1941); Application of Miller, 173 Misc. 347, 18 N.Y.S.2d 59 (S.Ct.1940); Tompkins v. Hale, 172 Misc. 1071, 15 N. Y.S.2d 854 (S.Ct.1939).

Several New York cases have in fact clearly held that a sale of stock in a co-operative corporation is a sale of personalty and not a sale of realty. In the instant case, the District Court states: "In the vernacular, plaintiffs 'bought a co-operative apartment,' . . . and that is all they bought." Whatever the vernacular usage may be, we think the New York law on the question was clearly stated in Susskind v. 1136 Tenants Corp., 43 Misc.2d 588, 598, 251 N. Y.S.2d 321, 325 (N.Y.City Civil Ct. 1964), where the court held: *"It is the shares of the corporation that are sold,* and, despite a vernacular use to the contrary, the apartment is not sold but leased under a so-called proprietary lease. . . ." (Emphasis added). Two other cases strongly support our conclusion that the transaction in the instant case was not a sale of realty under New York Law. See Silverman v. Alcoa Plaza Associates, 37 App.Div.2d 166, 323 N.Y.S.2d 39 (S.Ct.1971); In re Miller's Estate, 205 Misc. 770, 130 N.Y.S.2d 295 (N.Y.Co.Surrog.Ct.1954). Furthermore, we find quite persuasive appellees' common-sense argument in which it is stated:

"[A]n owner of stock in a co-operative corporation, although he is entitled to possession of an accommodation, is only entitled to it so long as he complies with the terms and conditions of a proprietary lease. Should he default under such terms possession could be forfeited although the stock ownership under such circumstances could be retained. The ownership therefor is that of the stock."

There is nothing suspect about this corporation. As the District Court acknowledged, "[t]he New York Legislature recognizes as a purpose for which a general co-operative corporation may be formed, the 'buying, selling or leasing [of] homes or farms for its members' . . . ." The District Court notes its concern that characterizing this property as stock would make it "entirely feasible for sellers to evade the price controls by incorporating every piece of realty desired to be sold, and selling the stock, which gives the purchaser sole use rights and transferability of the underlying realty." We would readily share this concern in the case of a corporation set up either wholly or partly for the purpose of evading price control regulations. This, however, is not such a case. There is not the slightest suggestion that any evasive purpose prompted the formation of this corporation; this corporation pre-dates the imposition of Phase I controls. Corporate "veils" are pierced only when there is a compelling reason for doing so. E. g., Bankers Life & Casualty Co. v. Kirtley, 338 F.2d 1006, 1013 (8th Cir. 1964). We find none here.

The regulations contain no definition of stock.[3] Thus the word "stock" must be given its usual and ordinary meaning. If it were intended to limit the stock exemption to particular types of stock, it would be easy to so state. As heretofore stated, the item sold here clearly meets the definition of a stock. The transfer is made by a stock certificate. The certificate of stock issued covers 143 shares and bears Certificate No. 582. The certificate on its face contains the words "Authorized Shares 188,320—Par Value $1.00 each." In the affidavit supporting the motion to dismiss, it is stated that the contract entered into was for 143 shares of stock; that the corporation is a publicly held corporation with assets of $22,000,000.00 with 188,320 shares of stock outstanding; that the sale of stock was offered to the public pursuant to the prospectus filed in accordance with New York law, and that the stockholders attend stockholders'

---

3. Subsequent to this transaction a definition of "security" has been promulgated. See 6 C.F.R. § 101.2, formerly § 101.51, 36 F.Reg. 21788 (Nov. 13, 1971), recodified in 37 F.Reg. 1237 (Jan. 27, 1972) CCH Economic Controls ¶ 3513.80. It is unhelpful for deciding this case.

985

meetings, and vote their stock to choose directors. Such allegations are not denied in the counter-affidavit.

The fact that the plaintiffs as an incident to their stock ownership were entitled to a proprietary lease of an apartment does not convert the stock to real estate. We hold that under the undisputed facts in this case the transaction here involved was a sale of stock and as such, exempt from Phase I price controls. Thus the plaintiffs have failed to state a cause of action and the complaint was properly dismissed for failure to state a cause of action. We further hold that the trial court properly dismissed the complaint for failure to state a cause of action. The trial court's judgment of dismissal was correct and is entitled to be affirmed, despite the fact that the trial court reached its result on grounds that differ from our own basis for reaching the same result. See Riley v. Commissioner, supra.

The judgment is affirmed.