The BOSTON FIVE CENTS SAVING
BANK, Plaintiff,

v.

Samuel R. PIERCE, Jr., Secretary of the
United States Department of Housing
and Urban Development, and Kenmore
Tower Corporation, Defendants.

Civ. A. No. 81–34–T.

United States District Court,
D. Massachusetts.

Oct. 26, 1984.

Harrison & Maguire, Stewart T. Herrick, Boston, Mass., for plaintiff.

Gregory Flynn, Asst. U.S. Atty., Boston, Mass., James G. Bruen, Jr., Civil Div., Dept. of Justice, Washington, D.C., for Secretary of Housing and Urban Development, Elizabeth A. Ritvo, Brown, Rudnick, Freed

& Gesmer, Boston, Mass., for Kenmore Tower Corp.

Anthony M. Feeherry, Goodwin, Procter & Hoar, Boston, Mass., for Nat'l Ass'n.

## ORDER

TAURO, District Judge.

This court approves Magistrate DeGiacomo's report and recommendation. In addition to the points made by the Magistrate in his report, this court notes that section 4 of the mortgage agreement, which states that all "rents, profits and income" from the property are assigned to the mortgagee, supports a conclusion that the parties did not intend to limit the subject property to use as rental units. If the parties had indeed contemplated that the property would be so limited, there would have been no need to specify as to the disposition of "profits and income," in addition to "rents."

Accordingly, the defendants' motion for summary judgment is hereby granted.

It is so ORDERED.

The BOSTON FIVE CENTS
SAVINGS BANK

v.

SAMUEL R. PIERCE, JR., as Secretary of the United States Department of Housing and Urban Development, and Kenmore Tower Corporation, formerly Harbro, Inc.

Magistrate No. 608–83–D

MEMORANDUM AND RECOMMENDATIONS RE RENEWED MOTIONS FOR SUMMARY JUDGMENT

January 30, 1984

DeGIACOMO, United States Magistrate.

The issue raised by these motions is whether there has been a breach of a Department of Housing and Urban Development insured mortgage by the mortgagor so as to enable the mortgagee bank (the plaintiff) to obtain the insurance benefits. There is no dispute as to the procedural history or any material fact. The action is cast in the form of a complaint seeking declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. Initially, following extensive discovery, motions for summary judgment brought by the parties, with the exception of the defendant Kenmore Tower Corporation, were denied by the trial judge. Following additional discovery, the matter was then assigned for a master's hearing. At pretrial conferences it became obvious that, on the then state of the record, renewed motions for summary judgment by all parties would be appropriate. It was so suggested and, all parties being in agreement, the instant renewed motions were filed, briefed and argued. For the reasons which follow, I am satisfied that summary judgment should be granted for the defendants.

## I. THE MATERIAL FACTS

Following an application in 1963 by the owners of a multi-story apartment building[1], they obtained in January, 1965 a mortgage from the plaintiff bank, insured by the Federal Housing Authority in the principal amount of three million one hundred fourteen thousand six hundred dollars ($3,114,600.00) for a period of 40 years at an interest rate of 5¼% per annum. The property consisted of rental housing. A regulatory agreement between HUD, acting through the Federal Housing Administration, and the owners was incorporated into and made a part of the mortgage. (Exhibit B) A security agreement pledging personalty as collateral was also executed. (Exhibit D) See also Plaintiff's Exhibits 8 and 9 of Volume 1.

[1]. The owner's "chain of title" is as follows: The Kenmore Square Apartment Company, a general partnership, Harold Brown, Harbro, Inc., a Massachusetts corporation wholly owned by Harold Brown, and Kenmore Tower Corporation (Exhibit H) The exhibits of the parties as they refer to material facts are duplicative. References, unless otherwise indicated are to joint exhibits of the defendants in support of their motions for summary judgment (docket # 156). The mortgage in question is Exhibit C.

In 1980 an application to HUD was made for a transfer of physical assets to Mr. Brown and when a copy of the application was forwarded to the bank, it informed HUD that it would not execute the application nor consent to the transfer. (Exhibit F) The application was subsequently amended and Mr. Brown, as proposed purchaser, was replaced by Harbro, Inc. HUD requested the bank to state its reasons for refusing to consent to the application and the bank declined. (Exhibits I and J) Approval by HUD was granted and the property was conveyed to Harbro, Inc. It executed an assumption agreement. (Exhibit L) Shortly thereafter, the bank was informed by Harbro, Inc. that it intended to change the property from rental residential housing to cooperative residential housing. HUD's opinion was requested on the proposed change and HUD responded that:

... Accordingly, we conclude that there is no legal prohibition, in terms of mortgagor or property eligibility, against the continuation of mortgage insurance on a mortgage which has been assumed by a cooperative corporation in connection with a transfer of physical assets of a rental project.

For the same reasons, we also conclude that there is no legal prohibition against HUD's permitting a rental project covered by a HUD-held mortgage to convert to a cooperative by means of a transfer of physical assets and assumption of the existing mortgage.

II. Your second question concerns the legal requirements that would apply to a cooperative conversion.

The properties under discussion are already insured before the conversion, so they are subject to the Regulatory Agreement requirements....

IV. Your final question involves the use of non-FHA notes for the individual purchase of dwelling unit shares in a cooperative project.

We see no objection to the use of such notes on a noninsured loan as long as the note-holder's security does not amount to an actual or potential lien or encumbrance on the property of the cooperative. The individual borrowing additional monies to purchase a membership in the cooperative may secure the loan by a pledge of the cooperative shares of any other collateral as long as no lien or encumbrance is placed on the real property....

(Pages 3 and 4, Exhibit N) Final approval was given by HUD to the transfer of assets to Harbro, Inc. (Exhibit P) HUD approved the cooperative plan (Exhibit R), and advised counsel for the bank that:

By memorandum dated October 10, 1980 the HUD Office of General Counsel has determined that there is no legal prohibition against HUD permitting a rental project insured under Section 207 to convert to a cooperative by means of a transfer of physical assets and assumption of the existing mortgage. (Please find attached a copy of the October 10, 1980 memorandum.)

(Exhibits Q and R; the October 10, 1980 memorandum is Exhibit N.) Thereafter, the conversion took place, common stock was issued and leases executed. (Exhibit S) Some shareholders obtained financing from the First Federal Savings & Loan Association by pledging shares in the cooperative and executing leasehold mortgages. (Plaintiff's Exhibits 27, 28, 29, Volume 1) This complaint for declaratory relief was filed on January 7, 1981, and was subsequently amended, the plaintiff alleging:

... That the conversion of 566 Commonwealth Avenue from rental apartments to cooperative ownership breaches its mortgage, since it results in a change in use of the property; additional liens being created against the property securing the mortgage; and an assignment of the rents and profits of the property. In addition, ... the conversion of the property violates the National Housing Act since cooperatives are not eligible for mortgage insurance under Section 207 of the National Housing Act.

(Plaintiff's Memorandum in Support of its Motion at (VI).) Both defendants argue *inter alia* that the mortgage has not been

breached in that a cooperative can be insured under Section 207 of the National Housing Act (12 U.S.C. § 1713); HUD may allow rental apartments to be converted to cooperative ownership while maintaining the mortgage insurance; and finally, that the consent of the mortgagee is not required before HUD can allow a conversion.

## II. DISCUSSION

### A. *Standing*

■ As a preliminary matter, the bank argues that an order of the trial judge on August 5, 1982 which provided in relevant part that:

> After consideration of the arguments presented by the parties at oral argument and in their written submissions, the court has determined that the plaintiff has standing to maintain this action, that plaintiff has not failed to exhaust its administrative remedies, and that the court is not precluded from reviewing the decision of the Department of Housing and Urban Development under *Hahn v. Gottlieb*, 430 F.2d 1243 (1st Cir.1970) and *Falzarano v. United States*, 607 F.2d 506 (1st Cir.1979).

is "the law of the case." I agree, and see no need of further discussion or citation.

### B. *The Mortgage*

The threshold question as recognized by the parties is whether or not the mortgage has been breached. If it has, the bank must prevail. If it has not, pages of argument become superfluous, need not be addressed, and the defendants must prevail.

■ The mortgage incorporates the regulatory agreement. The bank argues that equal force and effect must be given to both the mortgage and the regulatory agreement:

> if it is reasonably possible to do so and it cannot be subsumed that the provisions of one negate the provisions of the other, or are *reasonably intended to do so*. In addition, both the Mortgage and Regulatory Agreement were drafted by HUD which further emphasizes the proposition that they are to be read as supplement-

ing each other rather than being in the conflict which Defendants' advocated construction would superintend.

(Plaintiff's Memorandum in Support, footnote 1, page 8; emphasis supplied.) This position presupposes both conflict and equality. In my opinion, there is no conflict, and to give each document equal force would be to ignore what the bank admits; namely, that without the Regulatory Agreement there would be no mortgage. In short, the mortgage depends for its life on the Regulatory Agreement. Moreover, it must control, otherwise the authority of the Secretary would be set at naught with control passing to the bank. Nowhere in the frequently amended National Housing Act is there any evidence of such a Congressional intent. To the contrary, where a bank wishes to have its risk removed by having the benefit of the insurance under the Act, it gives up the control it exercises in a conventional mortgage and this is assured by the incorporation of the Regulatory Agreement with all its conditions. *Trans-Bay Engineers and Builders, Inc. v. Hills*, 551 F.2d 370, 379 (D.C.Cir.1976), cited by the bank, is not to the contrary. Thus, by the fact of prior approval conversion of the property to cooperative apartments, even assuming *arguendo* that this conversion constituted a change in use, creation of liens or an assignment of rents, it is my opinion that under the provisions of paragraph 6 of the Regulatory Agreement there has been no breach of the mortgage.

It follows that the involved arguments concerning a change in use of the property by conversion to cooperative ownership, liens and encumbrances allegedly created by the purchases of cooperative shares in financing said purchases and assignments of rents and profits, need not be reached. It will suffice to say that I have considered the bank's arguments with reference to these matters, and find them without merit. They are easily disposed of. By definition a cooperative apartment is a dwelling unit in a multi-dwelling complex in which each owner has an interest in the entire complex and a lease of his own apartment

though he does not own his apartment as in the case of a condominium. BLACK'S LAW DICTIONARY (5th ed. 1979, West Publishing Co.). The use of the property is residential. *See Bronstein, et al. v. The Prudential Insurance Company of America, et al.*, 390 Mass. 701, 459 N.E.2d 772 (S.J.C.1984). Contrary to the argument of the bank, *Bronstein* is not authority that a change from a rental apartment project, encumbered by a mortgage, to a cooperative housing project without the consent of the mortgagee constituted a change in use within the meaning of the matters at issue herein. As argued by the defendants in their memoranda, *Bronstein:*

> ... holds that under a specific Massachusetts statute relating to a type of urban redevelopment project requiring approval of a mayor and city redevelopment authority, conversion from rental apartments to cooperative ownership is a "fundamental change" in the "type and character of the buildings on such project" necessitating prior approval from a government entity, the redevelopment authority.

(HUD's Statement Concerning Plaintiff's Motion for Judicial Notice of Massachusetts State Law Re: Cooperative Conversion, page 3.)

▪ The bank's complaint about rents being diminished by conversion is specious. Paragraph 4 of the mortgage provides:

> That all rents, profits and income from the property covered by this Mortgage are hereby assigned to the Mortgagee for the purpose of discharging the debt hereby secured. Permission is hereby given to Mortgagor so long as no default exists hereunder, to collect such rents, profits and income for use in accordance with the provisions of the Regulatory Agreement.

First, the bank has no right to determine the level of rents. The approval of rents and charges is committed to agency discretion by law. *Hahn v. Gottlieb*, 430 F.2d 1243, 1249–1251 (1st Cir.1970). *See also Falzarano v. United States*, 607 F.2d 506, 512 (1st Cir.1979). Thus, whether the

carrying charges paid by the shareholder to the cooperative corporation are high or low, is not the concern of the bank unless the mortgage is in default. Conversion, as set forth supra, is not a default nor is the change in rent. Rent assignments are conditioned on a default, and even under those circumstances the bank is protected by the insurance contract with HUD. Nor has there been any dimunition in the bank's security interest.

The bank's argument that, when some tenant shareholders pledged their shares and leases as security for loans, paragraph 12 of the mortgage which provides that "the Mortgagor covenants that it will not voluntarily create or permit to be created against the property subject to this Mortgage any lien or liens inferior or superior to the lien of this Mortgage ..." was violated, also misses the mark. The bank simply refuses to accept the fact that the sale of stock in a cooperative corporation is not a sale of realty. As the temporary emergency Court of Appeals held in *Stockton v. Lucas*, 482 F.2d 979, 984 (1973) in upholding a decision of the United States District Court for the Southern District of New York:

> In the instant case, the District Court states: "In the vernacular, plaintiffs 'bought a co-operative apartment,' ... and that is all they bought." Whatever the vernacular usage may be, we think the New York law on the question was clearly stated in *Susskind v. 1136 Tenants Corp.*, 43 Misc.2d 588, 598, 251 N.Y. S.2d 321, 325 (N.Y.City Civil Ct.1964), where the court held: "*It is the shares of the corporation that are* sold, and, despite a vernacular use to the contrary, the apartment is not sold but leased under a so-called proprietary lease...." (Emphasis in original).

The court also accepted the appellees' common-sense argument in which it is stated:

> [A]n owner of stock in a co-operative corporation, although he is entitled to possession of an accomodation, is only entitled to it so long as he complies with the terms and conditions of a proprietary

lease. Should he default under such terms possession could be forfeited although the stock ownership under such circumstances could be retained. The ownership therefor is that of the stock.

Massachusetts law is not to the contrary. The shareholders have no ownership interest in the real property. Where a shareholder pledges his shares in return for a loan, the only interest held by the pledgee is an interest in personal property. There is no encumbrance on the realty. It follows that there is no violation of the provisions of paragraph 12 of the mortgage, supra.

## C. *The National Housing Act*

■ Finally, there remains the bank's statutory argument that the conversion of the property violated the National Housing Act since cooperatives are not eligible for mortgage insurance under Section 207 of the Act, 12 U.S.C. § 1713. This was most recently squarely addressed by Judge Lacey in *Angleton, et al. v. Samuel R. Pierce, Jr., Secretary, U.S. Department of Housing and Urban Development, et al.,* 574 F.Supp. 719 (D.N.J.1983). In that case the plaintiffs argued that the Secretary could not under any circumstances approve the conversion of rental housing to a cooperative, when the mortgage on the property was insured pursuant to 12 U.S.C. § 1713. Section 207

> has been described as "the major federal commitment to non-subsidized housing." ... It, like the Act's numerous other mortgage insurance provisions,[2] furnishes an incentive for private parties to build and finance residential housing by authorizing the Secretary to guarantee mortgages given by private developers to private lenders. Section 1713 empowers the Secretary to insure mortgages covering residential property held by governmental bodies or by
>
>> any other mortgagor approved by the Secretary which, until the termination of all obligations of the Secretary under the insurance ..., is regulated or restricted by the Secretary as to rents

>> or sales, charges, capital structure, rate of return, and methods of operation to such extent and in such manner as to provide reasonable rentals to tenants and a reasonable return on the investment.

[2] Others include 12 U.S.C. §§ 1709 (mortgage insurance for one- to four-family residences and units in cooperative housing projects), 1715e (mortgage insurance for cooperative housing projects), 1715*l* (mortgage insurance for housing for moderate income and displaced families), 1715m (mortgage insurance for servicemen), and 1738 (mortgage insurance for veterans).

After a thorough learned analysis of the legislative history and the applicable case law, Judge Lacey concluded that

> The legislative history clearly shows that Congress intended to allow cooperatives to be eligible § 207 mortgagors.... The court concludes that the Secretary's approval of the transfer of the assets ... to a cooperative does not violate 12 U.S.C. § 1713.

*Angleton,* pp. 731–732. The bank argues that Judge Lacey's analysis and conclusions are incorrect. I reject this position and specifically adopt his analysis of the legislative history of the Act and his conclusions therefrom. I am satisfied that I cannot improve on this and, therefore, to aid the trial judge in what I assume will be the inevitable appeal, Judge Lacey's decision is annexed to this recommendation as an appendix. I find it dispositive of the bank's argument.

I have carefully considered all other positions raised by the bank. I find them completely without merit. Inescapable in this entire litigation is the position of the bank, laudable from a business point of view, to escape from a 5¼% mortgage by obtaining the benefits of the government insurance, thus enabling it to recoup its funds and utilize them in a more profitable manner. The law being to the contrary, resuce is not that simple. One cannot build bricks without straw.

The familiar criteria of *Hahn v. Sargent,* 523 F.2d 461 (1975) being complied with, it is RECOMMENDED that the motions of the defendants for summary judgment be

granted, and that the motion of the plaintiff for summary judgment be denied.